27 F.3d 564
 22 Media L. Rep. 1922
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNDER SEAL, Plaintiffs-Appellees,
v.
UNDER SEAL, Defendant-Appellant.
 No. 94-1171.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1994.
Decided June 27, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis III, District Judge. (CA-92-475-A)
 Argued: James Severson, McCutchen, Doyle, Brown & Enersen, San Francisco, CA. On brief: Stephen W. Robinson, McGuire, Woods, Battle & Booth, Washington, DC, for Appellant.
 Argued: Douglas Neal Letter, Civil Division, United States Department of Justice, Washington, DC; John Michael Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA. On brief: Frank W. Hunger, Assistant Attorney General, Helen Fahey, United States Attorney, Civil Division, United States Department of Justice, Washington, DC; Elaine C. Bredehoft, Charlson & Bredehoft, P.C., Fairfax, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The question in the instant appeal is whether the district court acted within its discretion in refusing to impose a permanent seal on a qui tam complaint filed under the False Claims Act, 31 U.S.C. Sec. 3730(b), alleging fraud and false claims against a government contractor. The underlying suit has been settled between the United States and the contractor, with the latter paying $300,000 to the government. The contractor has moved to seal the complaint in an effort to prevent the disclosure of the identity of the qui tam relator.
 
 
 2
 The qui tam action was filed in April of 1992. It alleged that the manufacturer sold to the federal government computer equipment that was other than new, in violation of its contracts with the General Services Administration. The person who brought the suit had been an in-house attorney for the manufacturer, before filing his qui tam complaint.
 
 
 3
 Several related suits arose out of and preceded the qui tam action, including a suit for wrongful termination by the former employee and a suit brought by the manufacturer to enjoin him from revealing privileged information. The litigation between the two private parties was conducted under seal, both in the district court and in this Court.
 
 
 4
 After the qui tam action was settled, the United States applied to have the seal lifted for most of the district court record in the qui tam case. The manufacturer has filed with the district court a Motion to Maintain Confidential Information Under Seal, and a Motion to Dismiss or in the Alternative for Summary Judgment, arguing that the former employee is not a proper relator and that he may not, therefore, recover any portion of the settlement amount.* The United States opposed the motion for a permanent seal, contending that the district court record is subject to a common law right of public access, and that it should therefore be available to the public.
 
 
 5
 During the course of argument below, the manufacturer agreed to public disclosure of the settlement agreement, and even the government's issuance of a press release about the case. It objected, however, to any disclosure of the name, identity, and position of the relator.
 
 
 6
 On January 21, 1994 the district court issued the ruling on appeal here. The court denied the manufacturer's motion seeking to keep the qui tam complaint under seal. The district court stayed the immediate effect of its order so that the manufacturer could seek relief through appeal.
 
 
 7
 The district judge explained in a hearing on the motions that he did not find compelling the claim that a permanent seal was required to protect the manufacturer from possible harm if the fact that the qui tam complaint had been filed by one of the company's attorneys was disclosed.
 
 
 8
 The district court's Order precluded the government, during the pendancy of the appeal, from
 
 
 9
 publicly disclosing the complaint in this matter, the identity of the putative relator and the former employment relationship that existed between [the manufacturer] and the putative relator. But this stay does not preclude the government from publicly announcing the settlement of the qui tam action and disclosing the settlement agreement, provided that the information covered by the stay is not disclosed.
 
 
 10
 The manufacturer has appealed, essentially claiming that the revelation that the relator was formerly an in-house counsel at the company would cause it embarrassment. It also has asserted that the complaint contains privileged attorney-client information, since its allegations are derived from information the employee learned while he was in-house counsel. Additionally, the manufacturer has claimed that if the seal is not imposed on the complaint, the seals imposed in the prior cases between the two private litigants (the manufacturer and the erstwhile employee) will be undermined. Finally, it has been claimed that the government has shown an insufficient interest to support its desire to lift the stay.
 
 
 11
 We review the district court's decision not to order a permanent seal of the complaint under an abuse-of-discretion standard. James v. Jacobson, 6 F.3d 233, 239 (4th Cir.1993).
 
 
 12
 We recognize the long-established common law right of access to judicial records filed in court. See, e.g., In re Application and Affidavit for a Search Warrant, 923 F.2d 324, 326 (4th Cir.), cert. denied, 500 U.S. 944 (1991); Stone v. University of Maryland Medical System Corp., 855 F.2d 178, 180 (4th Cir.1988); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir.1988). It is a common law right that has been recognized by the Supreme Court. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (footnotes omitted). Courts have also recognized that when cases involve matters of particularly public interest, such as misspent government funds, the rationale for public access is even greater. See, e.g., Smith v. United States District Court for Southern Dist., 956 F.2d 647, 650 (7th Cir.1992) (appropriateness of making court files accessible is accentuated in cases where the government is a party) (citing FTC v. Standard Financial Management Corp., 830 F.2d 404, 410 (1st. Cir.1987)); United States v. Beckham, 789 F.2d 401, 413 (6th Cir.1986) (a district court must set forth "substantial reasons" for denying requests for access to court materials, and "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.") (citing United States v. Criden, 648 F.2d 814, 822 (3d Cir.1981)).
 
 
 13
 There are exceptions to the strong presumption of public access. Rushford, 846 F.2d at 253 ("presumption of access, however, can be rebutted if countervailing interests outweigh the public interests in access"). However, the party seeking to overcome the presumption of public access "bears the burden of showing some significant interest that outweighs the presumption." Id. (citation omitted).
 
 
 14
 It has first been argued that the complaint should be sealed in order to protect attorney/client privileges. The information contained in the complaint is little different from that contained in the settlement agreement, which, significantly, is a matter of public record. The same central claims--that the manufacturer a) sold to the Government used instead of new goods, and b) sold to the Government for full price the same goods it sold to its commercial customers in a remanufactured program for a 30% discount--are contained in both the complaint and the settlement agreement. Rather, it is the relator's identity and his former role as in-house counsel that the manufacturer seeks to keep from the public: "the Complaint's assertions are not merely charging allegations; they are, and of necessity would be interpreted to be, his [the possible relator's] legal conclusions about the confidential information he received." Appellant's Reply Brief at 4.
 
 
 15
 We are unpersuaded that the release of the relator's identity would cause the manufacturer any harm that could rise to a level necessary to overcome the presumption of openness. To the extent that anything in the complaint is based on privileged information, that information is largely contained in the settlement agreement. Certainly, the identity of the relator is not confidential under the attorney-client privilege.
 
 
 16
 The main concern appears to be the suffering of reputational harm, if it is discovered that one of the appellant's lawyers initiated a qui tam action against the corporation. But as the Sixth Circuit observed in Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir.1983), cert. denied, 465 U.S. 1100 (1984), "[s]imply showing that the [sealed] information would harm [a] company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." Accord Wilson v. American Motors Corp., 759 F.2d 1568, 1570-71 (11th Cir.1985). There has been no showing that the manufacturer's reputation would be harmed by the release of information now sealed. More than enough information is already public, in the form of the Settlement Agreement, to create what is asserted would be reputational harm.
 
 
 17
 Next it has been argued that a release of the complaint would undermine prior decisions of the district court and this Court sealing the proceedings in the related cases between the two private parties. The manufacturer has claimed that armed with the information contained in the complaint a diligent person could ascertain the identities of the parties in the other actions.
 
 
 18
 We are persuaded that there is already sufficient public information from which a researcher could learn the identities of the parties. Therefore, the harm alleged is actually illusory.
 
 
 19
 More important, the earlier decisions rendered by the district court and by us did not directly involve the government. Where the government is involved in the litigation, there is an undeniable public interest in the records of the proceedings.
 
 
 20
 We note that the qui tam statute itself, which makes some provision for temporary sealing of records while a case is in progress, contemplates that thereafter the records should be released. The pertinent provision requires the initial filing of the Complaint to be made under seal and in camera; after the United States has made its election whether or not to proceed "the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure." 31 U.S.C. Sec. 3730(b)(3). Indeed, qui tam actions are most often litigated in open court even in circumstances more sensitive to adverse publicity than are present here. See, e.g., United States ex rel. Taxpayers Against Fraud v. Singer Co., 889 F.2d 1327 (4th Cir.1989) (qui tam action litigated absent seal of pseudonyms in context of claim for $231 million, during period of leveraged buy-out of defendant).
 
 
 21
 Finally, the case of James v. Jacobson, 6 F.3d 233 (4th Cir.1993), which the manufacturer labels "directly analogous" to the instant case is, in fact, nothing of the sort. There, we reviewed and vacated an order denying the parties' request to proceed at trial anonymously. In that case, however, the court considered the question of whether the plaintiffs should be able to proceed anonymously in order to protect their minor children from the "perhaps severely damaging" emotional trauma that could arise from public disclosure of the identities of the plaintiffs who sued a fertility doctor for lying to them about the medical procedures they underwent. Id. at 241. Without anonymity, the minor children would have learned that the man they knew as their father was not actually their biological father.
 
 
 22
 Obviously the present case is not analogous. The reputational harm asserted here, even were it shown, would not come close to overcoming the burden of public access. In addition, the presence of the government in the instant case suggests an even greater presumption in favor of a public record.
 
 
 23
 Finally, the argument that the government has "no reason" to require the complaint's unsealing is simply irrelevant. The burden is not on the government to demonstrate its interest, but on the private party to show why its interest should overcome the public's interest in its right to access to judicial records. Such burden has here not been met.
 
 Accordingly, the judgment is
 
 24
 AFFIRMED.
 
 
 
 *
 Only the district court's ruling with respect to the Motion to Maintain Confidential Information Under Seal is before this court. Consequently, we refer to the former employee as the "relator" only for the sake of convenience, but make no determination as to his status